# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM J. DODSON, | ) | CASE NO. 5:20-cv-2632 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.,* | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, William J. Dodson ("Plaintiff"), challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner"),[1] denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. Procedural History

Plaintiff filed his application for DIB on January 26, 2018, alleging a disability onset date of October 1, 2015. (R. 10, Transcript ("Tr.") 152). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 92-123). Plaintiff participated in the hearing on October 4, 2019, was represented

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

by counsel, and testified. (Tr. 26-63). A vocational expert ("VE") also participated and testified. *Id*. On February 7, 2020, the ALJ found Plaintiff not disabled. (Tr. 21). The Appeals Council denied Plaintiff's request to review the ALJ's decision on September 24, 2020, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-9). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 14 & 18).

Plaintiff asserts the following assignments of error: (1) the ALJ's determination of Plaintiff's residual functional capacity ("RFC") is unsupported by substantial evidence, and (2) the ALJ's inference that Plaintiff obtained transferable skills from past employment is unsupported by substantial evidence. (R. 16, PageID# 409).

## II. Evidence

### A. Relevant Medical Evidence[2]

On January 16, 2017, Plaintiff saw Molly Friedman, D.O., noting ringing in his ears for the past three weeks as well as shoulder pain with decreased range of motion ("ROM") since the prior summer. (Tr. 296). On physical examination, Plaintiff had pain over the left shoulder and decreased ROM. (Tr. 297). His deep tendon reflexes were 2+ and symmetric. *Id*. His heart rate and rhythm were normal, with no gallops, murmurs, or pericardial rub. *Id*.

On April 16, 2018, State Agency physician Mehr Siddiqui, M.D., noted claimant alleged disability due to COPD, emphysema, and shoulder separation, but noted the most recent physical examination from January of 2017 shows "mild degenerative changes in L shoulder w/ no injury

---

[2] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

and tinnitus." (Tr. 67). Dr. Siddiqui explained that additional information was requested, but Plaintiff did not respond to contact attempts, and, therefore, there was not "insufficient evidence to fully assess his impairments and functioning." *Id*.

On May 10, 2018, Plaintiff admitted, in a clarifying call to the Social Security Administration, that he did not have any mental health impairment that prevented him from working. (Tr. 207).

On June 6, 2018, Plaintiff saw Eulogio R. Sioson, M.D., for a disability consultative evaluation due to complaints of chronic obstructive pulmonary disease ("COPD") and leg pain. (Tr. 236-240). Plaintiff reported being diagnosed with COPD eight years earlier during a hospitalization, but he had not been hospitalized or required emergency room treatment since that time. *Id*. He had been prescribed Advair, which he had not refilled in over a year, and he did not use an inhaler. *Id*. On physical examination, Plaintiff walked normally with no assistive device. *Id*. His lungs were normal. *Id*. Plaintiff did not complain of any pain in his hips, knees, or ankles; he had no atrophy or swelling and normal muscle testing. (Tr. 236-237). Dr. Sioson opined Plaintiff "could walk and stand but not continuously, occasionally lift and carry from 10 to 20 pounds. He could sit as needed. He could do handling and manipulation. Hearing and speaking appear unaffected." (Tr. 237).

On July 25, 2018, Plaintiff underwent resting doppler arterial studies of the lower extremities. (Tr. 252). The interpreting physician commented that there was "no evidence of peripheral arterial disease." *Id*.

On July 31, 2018, State Agency physician Lynne Torello, M.D., independently reviewed the record and determined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; could stand/walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour

workday. (Tr. 82). She opined Plaintiff could frequently climb ramps/stairs, occasionally crawl, and never climb ladders/ropes/scaffolds. (Tr. 82-83). She further assessed a need to avoid even moderate exposure to fumes, dusts, gases, poor ventilation, and hazards. (Tr. 83). Dr. Torello explained that her assessment was supported by the results of the June 6, 2018 consultative examination, which in pertinent part revealed the following:

> 5 / 5 strength, normal grasp, manipulation, pinch, fine coordination, able to grasp and hold a 1.6 lb dynamometer and manipulate with each hand, full ROM except reduced Shoulder flexion, abduction and adduction bilat, PFS FEVl 2.49, mild obstructive ventilator impairment, exam BP 170/98, 70 inches, 166 lbs, walked normally with no assistive device, could do heel/toe walking and rose from half squat with no pains, could get up and down from the exam table, vision 20/20 bilat with no correction, regular heart sounds, normal breath sounds, no edema, did not complain of pain in hips, ankles or knees, bilat femoral bruit louder in R, pedal, popliteal and femoral pulses were not felt, no obvious ischemic changes in feet, hx of COP, O2 97% RA at rest, leg pains, he has peripheral vascular disease-intermittent leg claudication with no definite peripheral pulses felt associated with bilat femoral bruit- advised to have medical f /u for PAD and high BP.

(Tr. 83-84).

 On August 14, 2018, Plaintiff saw Dr. Friedman for a follow-up for disability. (Tr. 293). On physical examination, Plaintiff exhibited normal movement and range of motion in all his extremities. (Tr. 294). His heart rate and rhythm were normal, and he had no gallops, murmurs, or pericardial rub. *Id.*

Plaintiff underwent an ultrasound of his right leg veins, on August 15, 2018, that revealed no evidence of deep venous thrombosis. (Tr. 303-304).

On October 30, 2018, Bradley Martin, M.D., recorded that Plaintiff was seen for management of his vascular disease and lipids. (Tr. 259). The doctor noted Plaintiff had peripheral arterial disease with some claudication in his left lower extremity. *Id.*

On October 10, 2018, Norman Kumins, M.D., performed an abdominal aortogram with

bilateral lower extremity runoff; selective right lower extremity angiogram; balloon angioplasty of the right deep femoral, common femoral, and superficial femoral arteries; and stent placement in the right common iliac artery. (Tr. 311, 315). Dr. Kumins indicated that there was "[m]uch less claudication" on the right, and that the claudication was "gone" on the left. *Id*.

On October 30, 2018, Plaintiff saw Bradley Martin, M.D., who noted Plaintiff had peripheral arterial disease. (Tr. 259-260). He did not have any concerning anginal symptoms, but had some claudication in his left lower extremity *Rutherford* Class II, for which he was following up with Dr. Kumins later in the week. *Id*.

On November 1, 2018, Plaintiff presented for a post-operative visit with Dr. Kumins after he underwent a balloon angioplasty and stent placement in the right common iliac artery on October 10, 2018. (Tr. 315). Dr. Kumins noted that claudication on the right was "improved," but that Plaintiff was now limited by left-sided symptoms. *Id*. It was noted that Plaintiff "[d]oes not need assistance walking in his home. He does not need assistance in an unfamiliar setting. The patient is not using an assistive device." (Tr. 316).

On November 19, 2018, Dr. Kumins' provider impressions indicated that "disabling claudication right lower extremity improved after iliac stent, deep femoral artery PTA," and that "disabling claudication left lower extremity gone after SFA atherectomy and drug coated balloon angioplasty." (Tr. 314). Plaintiff reported 4 of 10 pain in the left leg. (Tr. 313). On physical examination, Plaintiff's "[u]pper and lower extremities have good range of motion with normal strength and tone. Heart- Regular rate and rhythm, lungs clear, Abdomen soft and non tender. Pulse exam: Normal femoral and L pedal pulses." (Tr. 314).

On December 13, 2018, Plaintiff presented for a post-operative visit with Dr. Kumins after an atherectomy and angioplasty was performed on the left common femoral artery on November

14, 2018. (Tr. 305). Although Plaintiff related post-operative pain in the left thigh, claudication on the left was "gone." *Id*. Dr. Kumins noted Plaintiff "[n]ow has very noticeable R[ight] thigh and calf disabling claudication." (Tr. 305, 310). Plaintiff had not fallen in the last six months and was not using an assistive device. (Tr. 306). Dr. Kumins stated that the plan was "[f]or R[ight] leg revascularization needs femoral endarterectomy and fem distal bypass." (Tr. 310).

On December 20, 2018, Plaintiff saw Dr. Friedman for a consultation on disability. (Tr. 290). On physical examination, Plaintiff exhibited normal movement and range of motion in all his extremities. (Tr. 292). His heart rate and rhythm were normal, and he had no gallops, murmurs, or pericardial rub. *Id*.

On July 18, 2019, Plaintiff again saw Dr. Friedman wanting to discuss his upcoming disability hearing with her. (Tr. 287). He reported chronic right leg pain and being able to walk only a few feet due to shortness of breath. *Id*. On cardiovascular examination, Plaintiff's "[h]eart rate and rhythm were normal, normal S1 and S2, no gallops, no murmurs and no pericardial rub." (Tr. 289). On pulmonary examination, auscultation of lungs was "[a]bnormal" with "dec. breath sounds." *Id*. On musculoskeletal examination, ROM was normal, no joint swelling was seen, and Plaintiff had normal movements of all extremities." *Id*. Deep tendon reflexes were positive and symmetric bilaterally; Plaintiff had no edema but "varicosities both lower ext[remities]." *Id*. Dr. Friedman's impression noted "pt has hearing 10-19" and opined "He is disabled." *Id*.

**B. Relevant Hearing Testimony**[3]

During the October 4, 2019 hearing and after Plaintiff's testimony, the VE classified Plaintiff's past two jobs as follows: (1) welder, fitting Dictionary of Occupational Titles

---

[3] As Plaintiff has not directly challenged the ALJ's credibility determination, the court omits any recitation of Plaintiff's testimony.

("DOT") 819.361-010, SVP level 7, skilled and medium physical demand level both per the

DOT and as actually performed; and (2) "a composite job with the first job title being the welder,

fitter, and the second job title being the small business owner," DOT 185.167 046, SVP level 7,

skilled, with light physical demand level per the DOT although Plaintiff performed the job at the

medium level. (Tr. 40).

Also during the herring, the ALJ posed the following hypothetical question to the VE:

> I'd like you please to assume a hypothetical individual of the Claimant's age and
> education and with the past jobs that you've described. I'd like you further to
> assume that this individual can perform light work as defined in the regulations
> with the following additional limitations. He can frequently climb ramps or stairs
> but can never climb ladders ropes of [sic] scaffolds. He can occasionally crawl.
> He can work in an environment with occasional exposure to workplace hazards
> such as moving, mechanical parts, poor ventilation or pulmonary irritants such as
> fumes, odors, dusts or gases. He must avoid all exposure to workplace hazards
> such as unprotected heights.

(Tr. 40-41). The VE testified that such an individual could not perform any of Plaintiff's past

work, and that his testimony was consistent with the DOT. (Tr. 41).

The ALJ proceeded to ask the VE whether "looking at the question of transferable

skills, are there transferable skills from the jobs that the Claimant has performed that would be

transferable to a person, an individual with the limitations that I've described in hypothetical 1

today?" (Tr. 42). The VE responded as follows: "Yes, there would be certainly some skills

learned while owning and operating a business that would transfer into some sedentary jobs." *Id*.

The VE testified that such skills would be transferable "with little, if any vocational adjustment

in terms of tools, work processes, work settings or industry." *Id*. When asked to specifically

identify the skills, the VE testified as follows: "[t]hese are communications skills, organization

skills, the ability to multi-task, planning and scheduling…. [b]asic office skills, computer skills."

(Tr. 42).

7

The ALJ inquired whether there are specific jobs that those skills will transfer into that also meet the limitations of the hypothetical posed above. (Tr. 43). The VE responded in the affirmative, and identified the following jobs as examples of ones the hypothetical individual could perform: customer order clerk,[4] DOT 249.362-026, SVP level 4, semi-skilled (63,000 jobs nationally); information clerk,[5] DOT 237.367-022, SVP level 4, semi-skilled (99,000 jobs nationally); and, appointment clerk,[6] DOT 237.367-010, SVP level 3, semi-skilled (125,000 jobs nationally). (Tr. 43-46).

The ALJ posed an additional hypothetical asking the VE to assume all the same limitations as in the first hypothetical but limiting the individual to sedentary work. (Tr. 60). The VE testified that hypothetical individual would be able to perform all of the above-identified transferable skills, and that her testimony was consistent with the DOT. *Id*.

---

[4] The VE stated that a customer order clerk, per the DOT, "processes orders for material or merchandise received by mail, telephone or from customers in person manually or using a computer, so basically keeping in contact with that customer, providing updates as to when the item would be available, records the sales, copies of orders received, so using the skills -- basic -- a lot of that paperwork skill that he developed in the owner/operator position would be utilized in this position as well." (Tr. 43). The ALJ asked Plaintiff whether the description of the customer order clerk position included some of the types of activities that he engaged in as the owner/operator of a small business. *Id*. Plaintiff responded in the affirmative. *Id*.

[5] The VE stated that an information clerk answers questions from people entering an establishment; provides information regarding activities conducted at the establishment and location of departments, offices and employees within the organization; informs customers of location of merchandise; provides information concerning services; and receives and answers requests for information. (Tr. 44). When Plaintiff was asked whether those activities were ones he performed, he responded that he did not perform such activities directly but oversaw it. (Tr. 44-45).

[6] The VE stated that an appointment clerk schedules appointments with employers or employees for clients by phone or in person, records the time and dates of the appointments, makes calls, writes clients to remind them of appointments, and may receive payments for services. (Tr. 46). The VE testified that "the skills would transfer with little or no vocational adjustment in terms of tools, work processes, work settings or industry." *Id*. Plaintiff testified that he oversaw secretarial staff who performed such tasks. (Tr. 47).

Plaintiff's counsel inquired whether an individual who was limited to less than an hour of walking in an 8-hour workday could perform the above identified jobs. (Tr. 62). The VE testified that those jobs would remain available for someone so limited. *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s)

does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020 (Exhibit 7D).

2. The claimant has not engaged in substantial gainful activity since October 1, 2015, the alleged onset date (20 CFR 404.1571 et seq.) (Exhibits 2D-10D, 2E, and 5E).

3. The claimant has the following severe impairments: Osteoarthritis of the left shoulder; peripheral arterial disease; arteriosclerotic cardiovascular disease; atherosclerosis of the native artery in the bilateral lower extremities with intermittent claudication, status post surgical correction; high cardiac calcium score; and chronic obstructive pulmonary disease (COPD) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) (Hearing Testimony, and Exhibits 9E, and 1F-9F).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work, as defined in 20 CFR 404.1567(a), with additional limitations, as follows: He can occasionally climb ramps or stairs, but can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, or crawl. He can work in an environment with no more than occasional exposure to workplace hazards such as moving mechanical parts, poor ventilation, or pulmonary irritants such as fumes, odors, dusts, or gases. He must avoid all exposure to workplace hazards, such as unprotected heights.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565) (Hearing Testimony, and Exhibits 2D-10D, 2E, 5E, and 10E).

7.     The claimant was born on ***, 1957 and was 58 years old, which is defined as an individual of advanced age, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching retirement age (20 C.F.R. 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     The claimant has acquired work skills from past relevant work (20 CFR 404.1568) (Hearing Testimony).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2015, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 15-16, 19-20).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id*. However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

11

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

**1. RFC Determination**

In the first assignment of error, Plaintiff asserts the ALJ's determination of Plaintiff's RFC is unsupported by substantial evidence. Specifically, Plaintiff contends the ALJ erred by discounting all the medical opinions of record and crafting an RFC based on the ALJ's own lay interpretation of the record. (R. 14, PageID# 421).

A claimant's RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a). The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c). Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, ***the claimant's RFC***, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)). While it is well-established that administrative

law judges may not make medical judgments, *see Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006), "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009).

To the extent Plaintiff suggests the ALJ must approach the medical opinions on an all-or-nothing basis, Plaintiff cites no authority that an ALJ must either accept or reject an opinion in its entirety for an RFC to be supported by substantial evidence. Several decision from this district have rejected the notion that the RFC determination must exactingly correspond to the opinion of a single medical source. *See, e.g., Chambers v. Comm'r of Soc. Sec.*, 2017 WL 4012921, at *9 (N.D. Ohio Sept. 12, 2017) ( "[A]n RFC need not precisely mirror a particular medical opinion. And, conversely, assigning great weight to an opinion that does not include a particular impairment does not, therefore, mean that impairment was not considered within the ALJ's decision.") (Knepp, M.J.); *Sonnenlitter v. Comm'r of Soc. Sec.*, 2012 WL 4794639, at *15 (N.D. Ohio Oct. 9, 2012) ("[T]he fact that the ALJ gave [an] opinion great weight does not mean that the ALJ must, therefore, adopt every limitation found [in the same opinion].") (Vecchiarelli, M.J.). This court has also very recently rejected a similar argument, stating:

> Plaintiff's brief does not meaningfully argue that the ALJ failed to properly consider the State Agency opinions, referred to as prior administrative medical findings under the new regulatory framework. Instead, Plaintiff's brief primarily takes issue with the ALJ failing to adopt a single medical source opinion wholesale, and seeks to recast the ALJ's designation of the opinions as "partially persuasive" as tantamount to a rejection. (R. 13, PageID# 647). Indeed, Plaintiff's reply unambiguously asserts that the ALJ "played doctor" because, she believes, the RFC was "not consistent with any of the reviewing, examining, or treating opinions in the record ...." (R. 15, PageID# 685). Plaintiff, however, cites no authority for the proposition that an ALJ must essentially choose a single source's opinion and adopt it in its entirety.
>
> The pertinent question, rather, is whether the ALJ's RFC finding has the support

of substantial evidence in the record

*Techau v. Kijakazi*, No. 5:20-cv-508, 2021 WL 4291289, 2021 U.S. Dist. LEXIS 179808, at *26-27 (N.D. Ohio Sep. 21, 2021).

The RFC finding is in fact supported by substantial evidence, as it has the support of the opinion of State Agency physician Dr. Torello, as well as the opinion of consultative examiner Dr. Sioson. The ALJ's RFC determination—that Plaintiff could perform sedentary work with additional limitations—is supported by the July 31, 2018 opinion of State Agency physician Dr. Torello (*i.e.* prior administrative medical findings). (Tr. 82-84; Exh. 3A). Dr. Torello assessed that Plaintiff could perform light exertional work with some postural and environmental limitations. *Id*. While the ALJ found that the level of functioning assessed by Dr. Torello was no longer "supported by the medical record as a whole at the time of the hearing" due to Plaintiff's additional impairments and worsening of symptoms (Tr. 18), Dr. Torello's opinion, nonetheless, supports the finding that Plaintiff can perform sedentary work. With respect to Dr. Sioson, the ALJ found his opinion "persuasive but vague." *Id*.

Again, Dr. Torello found Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, as well as stand/walk for six hours and sit for six hours each in an eight-hour workday. (Tr. 82). Dr. Sioson found that Plaintiff "could walk and stand but not continuously, occasionally lift and carry from 10 to 20 pounds. He could sit as needed. He could do handling and manipulation." (Tr. 237). Plaintiff's abilities, as assessed by Dr. Torello, are unambiguously consistent with the requirements of light work. 20 C.F.R. § 404.1567(b). Dr. Sioson's assessment, although less precisely stated, also appears to be consistent with the regulations' requirements of light work. The regulations expressly state that "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting

factors such as loss of fine dexterity or inability to sit for long periods of time." *Id*. Thus, while the ALJ did not agree with Dr. Torello or Dr. Sioson that Plaintiff could perform light exertional work (Tr. 18), their opinions, nonetheless, supports the ALJ's conclusion that Plaintiff could perform the exertional demands of sedentary work.

Ample case law concludes that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work."). Thus, an RFC determination that is supported by the medical opinions of State Agency physicians is generally supported by substantial evidence.

Finally, Plaintiff asserts that because evidence post-dating the State Agency opinions and consultative opinion demonstrated a worsening in Plaintiff's condition, the ALJ had a responsibility to "recontact the treating source, order a consultative examination, or have a

medical expert testify at the hearing." (R. 14, PageID# 423). While the ALJ did indeed acknowledge that Plaintiff's impairments had worsened (Tr. 18), she concomitantly assessed greater limitations than any medical source opinion. Plaintiff relies on a court decision which stated that "where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source,[7] order a consultative examination, or have a medical expert testify at the hearing." *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008). However, *Deskin* has received negative treatment or been distinguished by no less than twenty-six other decisions from district courts within this Circuit. At least one decision has expressly held that:

> *Deskin***, is not representative of the law established by the legislature, and interpreted by the Sixth Circuit Court of Appeals**.
>
> &#42;&#42;&#42;
>
> The ALJ, not a physician, is assigned the responsibility of determining a claimant's RFC based on the evidence as a whole. 42 U .S.C.A. § 423(d)(5)(B); 20 C.F.R. § 416.946(c). Pursuant to the regulations, the ALJ is charged with evaluating several factors in determining the RFC, including the medical evidence (not limited to medical opinion testimony), and the claimant's testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 633 (6th Cir. 2004); SSR 96–5p, SSR 96–8p. The final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 416.927(e)(2).

---

[7] Notably, *Deskin* was decided in 2008. Numerous courts have found that any *duty* to recontact a physician was eliminated in March of 2012 when those provisions of the regulations were eliminated. *See Glover v. Comm'r of Soc. Sec.*, No. 1:16 CV 84, 2016 WL 7638142, 2016 U.S. Dist. LEXIS 180821, at *22 (N.D. Ohio Dec. 22, 2016) ("[M]any courts have found that such a mandatory duty to recontact in SSR 96-5p, 1996 SSR LEXIS 2 is no longer valid in light of regulatory changes.") (collecting cases). The language of 20 C.F.R. § 404.1520b clearly reflects that the decision to recontact became discretionary). "Courts have concluded that the 'duty to recontact is now permissive, rather than mandatory.'" *Worth v. Comm'r of Soc. Sec.*, No. 2:20-cv-4620, 2021 WL 3029680, 2021 U.S. Dist. LEXIS 133624, at *22 (S.D. Ohio July 19, 2021).

*Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (Nugent, J.) (emphasis added); *accord Peterson v. Comm'r of Soc. Sec.*, No. 1:16-CV-363, 2017 WL 343625, at *3 (W.D. Mich. Jan. 24, 2017) ("It not the ALJ's burden to seek out medical opinions to prove or disprove a disability claim…. Rather, it is Plaintiff's obligation to provide evidence to support his claim of disability.") (citations omitted); *Todd v. Comm'r of Soc. Sec.*, No. 3:17 CV 1500, 2018 WL 4932499, at *12 (N.D. Ohio July 31, 2018) (finding no error where the RFC was "largely consistent" with two medical opinions of record "but was more limited" to account for other limitations), *report and recommendation adopted*, 2019 WL 1396923 (N.D. Ohio Mar. 28, 2019); *Williams v. Astrue*, No. 1:11-CV-2569, 2012 WL 3586962, at *7 (N.D. Ohio Aug. 20, 2012).

Rather, as argued by the Commissioner, the decision to order an updated physical consultative exam lies within the ALJ's discretion. (R. 18, PageID# 450). Where the record contains sufficient evidence about an impairment, an ALJ does not abuse his discretion by declining to obtain an additional assessment. *See Culp v. Comm'r of Soc. Sec.*, 529 Fed. App'x 750, 751 (6th Cir. 2013). In *Robertson v. Comm'r of Soc. Sec.*, 513 F. App'x 439 (6th Cir. 2013), the Sixth Circuit found that "[g]iven the considerable amount of medical evidence in the record concerning Robertson's cardiovascular problems and his resulting functional capability, including test results, physicians' notes, and opinion evidence from multiple physicians, and the lack of any significant inconsistencies in the evidence, the ALJ was not obligated to order a consultative examination with a cardiologist." Plaintiff's argument is even less compelling herein, as a consultative examination *did* occur, and Plaintiff merely believes in his lay opinion that new evidence should have resulted in a new consultative exam. Plaintiff, however, cites no binding legal authority to support his argument.

### 2. Transferable Skills

In the second assignment of error, Plaintiff asserts that the ALJ's finding that Plaintiff obtained transferable skills from past employment is unsupported by substantial evidence. (R. 14, PageID# 425-431). Plaintiff contends that the "skills" identified by the ALJ should instead be classified as "aptitudes." (R. 14, PageID#  426-429).

Once the ALJ determines claimant does not have the residual functional capacity to perform her past relevant work, the burden shifts at Step Five to the Commissioner to show that claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy. *Wilson*, 378 F.3d at 548; *Varley v. Sec'y, HHS*, 820 F.2d 777, 779 (6th Cir. 1987). To meet this burden, there must be "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley*, 820 F.2d at 779 (quoting *O'Banner v. Sec'y, HEW*, 587 F.2d 321, 323 (6th Cir. 1978)). The ALJ may rely upon the testimony of a vocational expert (VE) at Step Five. "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy*, 594 F.3d at 516; *see also Pasco v. Commissioner of Social Sec.*, No. 03-4358, 2005 WL 1506343, at *13 (6th Cir. June 23, 2005); *Varley*, 820 F.2d at 779 (citing cases).

The ALJ must then assess whether the claimant has transferable skills pursuant to 20 C.F.R. § 404.1568(d)(1)-(3) and Social Security Ruling (SSR) 82–41. The claimant is considered to have transferable skills when skilled or semi-skilled work activities the claimant did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kids of work. Here, the ALJ did indeed find that Plaintiff had acquired transferable skills

based on the VE's testimony that the claimant's past relevant included work as a small business owner, DOT 185.167-046. (Tr. 19-20). The ALJ's decision identifies these transferrable skills as follows: basic communication skills; organizing skills; multi-tasking skills; planning skills; office skills; and computer skills. (Tr. 19-20).

The ALJ's finding was unambiguously based on the VE's testimony. The VE explicitly testified, as recounted above, that "there would be certainly some skills learned while owning and operating a business that would transfer into some sedentary jobs." (Tr. 42). The VE further testified that such skills would "be transferable with little, if any vocational adjustment in terms of tools, work processes, work settings or industry." *Id*. The VE also expressly identified those skills as follows: "communications skills, organization skills, the ability to multi-task, planning and scheduling…. [b]asic office skills, computer skills." *Id*. The ALJ's determination is, therefore, supported by substantial evidence in the form of VE testimony.

The Sixth Circuit has recognized that: "[a]n 'aptitude' is an 'inclination, a natural ability, talent, or capacity for learning.' A 'skill' is a "learned power for doing something competently." In short, an aptitude is an innate ability while a skill is a learned ability. While a person may have natural talents including dexterity, general coordination, space relations, etc., that same person may not have the particular learned ability to do a specific job." *Harris v. Comm'r of Soc. Sec.*, 598 Fed. App'x 355, 363 (6th Jan. 21, 2015) (quoting *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 311–12 (6th Cir. 1983)). The court cannot override the VE's testimony that Plaintiff acquired organizing skills; multi-tasking skills; planning skills; office skills; and computer skills. Furthermore, such skills cannot reasonably be characterized as aptitudes. The identified office skills acquired after years of running a small business cannot reasonably be deemed and an inclination or natural ability. This court cannot simply discount the unequivocal

testimony of a highly trained vocational expert based on Plaintiff's self-serving assertion that the "skills" identified by the VE were actually "aptitudes."

As this court has previously observed where a claimant argued that the VE was incorrect in her classification of a plaintiff's past work, "[t]he court is highly skeptical whether this argument presents a cognizable claim. Plaintiff's brief cites no authority suggesting that a reviewing court, such as this one, can stand in the shoes of a vocational expert and make its own contrary determination." *Purk v. Berryhill*, 2017 WL 1169709, at *6 (N.D. Ohio Mar. 10, 2017), *report and recommendation adopted*, 2017 WL 1155747 (N.D. Ohio Mar. 28, 2017); *see also Carter v. Heckler*, 1987 WL 4790 at *7 (E.D. Pa. Mar. 2, 1987) ("Just as the ALJ is not permitted to substitute her judgment for that of medical experts, she may not substitute her judgment for that of vocational experts.")

In addition, another court in this circuit has explained that "[t]he Commissioner's conclusion of transferable skills need only include three findings: (1) identification of the acquired work skills; (2) occupations to which these skills are transferable; and (3) evidence that these occupations exist in significant numbers in the national economy." *Clark v. Colvin*, No. 3:16-cv-01340, 2017 WL 169103 (M.D. Tenn. Jan. 17, 2017) (citing SSR 82-41, 1982 SSR LEXIS 34 at *18, 1982 WL 31389, at *7). Here, the VE made all three findings when she identified the acquired skills, identified the occupations to which those skills transfer, and provided evidence that those jobs exist in significant numbers—even taking into account the hypothetical individual's several limitations.

Plaintiff also argues that he did not actually acquire the skills that the VE testified were transferable from work as the owner of a small business. (R. 14, PageID# 428-429). This assertion, however, runs contrary to the VE's expert testimony as well as the opinion that an

individual who owned or operated a small business would "certainly [learn] some skills … while owning and operating a business that would transfer into some sedentary jobs." (Tr. 42) (testifying further, the VE stated "these are communication skills, organization skills, the ability to multi-task, planning and scheduling."). As such, the ALJ's decision reasonably determined "that the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (R. 10, PageID 92).

Furthermore, Plaintiff's argument that the ALJ failed to sufficiently determine the degree of vocational adjustment required in the sedentary jobs the VE identified is untenable.[8]  (R. 14, PageID# 429-430). During the hearing, the ALJ asked the VE whether the skills identified by the VE were "transferable with little, if any vocational adjustment in terms of tools, work processes, work settings or industry?" (Tr. 42). The VE responded "Yes." *Id*. The ALJ's decision, therefore, determined, "The vocational expert testified the claimant's previous work is so similar to the jobs recited above that the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." (R. 10, PageID 92). Plaintiff's contention—that the ALJ's "conclusion is clearly irrelevant and frivolous"—is wholly unsupported by the record, as the conclusion is unambiguously supported by the VE's testimony, which constitutes substantial evidence. (R. 14, PageID# 430). Again, the court cannot set aside the ALJ's reasonable reliance on the VE's testimony in favor of Plaintiff's lay interpretation of vocational requirements or lay opinion regarding what skills would be acquired during the

---

[8] Plaintiff points out that according to 20 C.F.R. Subpart P, Appendix 2, Rule 201.00(f) (1983), "[i]n order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 or over), there must be little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry."

performance of certain jobs.[9]

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: January 20, 2022

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).**

---

[9] Finally, it bears noting that neither Plaintiff nor Plaintiff's counsel questioned the VE at the hearing regarding any of the transferability issues that are raised herein. (Tr. 62-63). This court has previously observed that a claimant's "failure to raise these issues during the hearing precludes her from now asserting either of them as a basis for relief." *Kinstler v. Comm'r of Soc. Sec.*, No. 1:18CV0805, 2019 WL 4694218, at *6 (N.D. Ohio Sept. 26, 2019) (*citing Harris v. Comm'r of Soc. Sec.*, No. 1:11CV1290, 2012 WL 4434078, at *3 (N.D. Ohio Sept. 24, 2012) (McHargh, M.J.) ("The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court.") (*citing Hammond v. Chater*, 116 F.3d 1480 (6th Cir. 1997) (Table), and other cases).